IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


TYREE MAURICE GOINS                                    PETITIONER


v.                        NO. 4:20-cv-01101 BRW-PSH


DEXTER PAYNE                                          RESPONDENT


FINDINGS AND RECOMMENDATION


INSTRUCTIONS


The following proposed Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

<u>DISPOSITION</u>

<u>STATE COURT PROCEEDINGS</u>. The facts giving rise to the case at bar were summarized by the Arkansas Court of Appeals in adjudicating the direct appeal of petitioner Tyree Maurice Goins ("Goins"). The summary is as follows:

> TL [<u>i.e.</u>, the victim] testified she was born on October 23, 2001. She stated she was thirteen years old when she met Goins at the Fox Creek Apartments in Texarkana. TL explained she lived in an apartment complex located next door to his. According to her, approximately two weeks after meeting Goins, they had sex for the first time. She described several subsequent sexual encounters with Goins. As abstracted, she described in part her first sexual encounter with Goins as follows:
>
>> One night we were outside. He asked me if I wanted to go to the store and I said yes. And we didn't go to the store right away. And we, we went somewhere and had sex. No, ma'am, I do not remember about what time of year it was. Yes, ma'am, I do remember it was before my fourteenth birthday.
>>
>> ….
>>
>> Yes, ma'am, it was a burgundy car with tinted windows. I can tell you what happened in the burgundy car with tinted windows. We had sex. I don't know where he parked and told me that he would not hurt me, that I'd be okay. He told me to take off my clothes and he got out of the car and got in the back seat where I was and we had sex. He said everything was going to be okay and he was not going to hurt me.

> I can tell you what I mean when I say he had sex with me. When a male sticks their penis in a female's vagina, Yes ma'am, that did happen. No, ma'am, I do not know what made it stop. Next, we left. No, ma'am, I do not know if anything came out of his penis. No, ma'am, nothing came out of my vagina. Then we left and went to Church's and back to Fox Creek.
>
> I remember that it made my vagina feel weird.... It was my first time so it felt weird.

TL then testified about at least six additional sexual encounters with Goins. She described another time they had sex in the same burgundy car in the parking lot of the Links Apartments. She testified Goins "started licking my vagina and then we start[ed] having sex." She said she took her clothes off; he just pulled down his pants; he told her to turn around and bend over; he was behind her and he started having sex, which she again described as a "man's penis going in the vagina"; and she said that was what happened that day at the Links Apartments.

She explained they also had sex in a Fox Creek apartment where nobody lived because it was getting fixed. They were in one of the rooms in the apartment; they had sex in that room. She said her pants came off; his pants "got pulled down."

She also described a sexual encounter that took place in his apartment at Fox Creek where he lived with the mother of his children. TL testified they did not have sex, but she described the encounter as going into his room and "his penis was in my mouth." The kids were outside playing.

She described another time when they were parked by the fairgrounds and had sex in the burgundy car. She said when they finished having sex, Goins grabbed a towel. TL acknowledged that when she said they had sex, it was the same definition she had previously given. She then described a time when he came to get her at the Village Park South apartments, and they "went

somewhere" where they had sex in a black Jeep; she did not know where they were, but she described the route they took to get there.

Finally, she described an encounter that took place in a "grayish silver looking car" in a "big parking space behind E-Z Mart and Wendy's on State Line and by Motel 6." She testified they were in the car and had sex and that "sex" meant what it had meant all the other times. She said at least one or more of the seven sexual encounters she described happened before her fourteenth birthday on October 23, 2015. TL explained her brother saw texts she and Goins had exchanged on her brother's phone, and her brother showed their mother, who called the police.

See Goins v. State, 2019 Ark.App. 11, 568 S.W.3d 300, 302–303 (2019).

Goins was charged with one count of rape pursuant to Ark. Code Ann.

5-14-103. In an amended criminal information, the State alleged the

following:

On or about February 2015 through October 2015, in Miller County, Arkansas, the said defendant did unlawfully and knowingly engage in sexual intercourse or deviate sexual activity with another person, namely T.L., who was less than fourteen (14) years of age.

See Docket Entry 8, Exhibit G, Part 1 at CM/ECF 10. Goins was subsequently

tried and convicted of the offense in Miller County Circuit Court. He

appealed his conviction, but the state Court of Appeals found no reversible

error and affirmed his conviction.

4

Goins then filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 ("Rule 37"). The state trial court denied the motion, and he did not file a timely notice of appeal. He later filed a motion for belated appeal, but the state Court of Appeals denied the motion.

PLEADINGS AT BAR. Goins began this case by filing an approximately fifty-four page, fourteen claim petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. Many of the claims are related and involve the same facts. Liberally construing the petition, he alleged the following:

1) The state trial court erred when it denied Goins' motions for directed verdict predicated on the following grounds: A) TL's pre-trial statements were inconsistent with her trial testimony, and B) Goins was incarcerated for another offense during most of February of 2015 and could not have committed the offense. See Docket Entry 2 at CM/ECF 18-26 (alleged by him as claims one and two).

2) The state trial court erred in the following respects: A) when it barred Goins from offering proof that animus between Goins and TL's mother, Stephanie Harris ("Harris"), gave rise to the charge, and B) when the court denied his motion for directed verdict on that ground. See Docket Entry 2 at CM/ECF 26-34 (alleged by him as claim three).

3) The state trial court erred when it admitted the recordings of telephone calls Goins participated in from jail. <u>See</u> Docket Entry 2 at CM/ECF 34-39 (alleged by him as claim four).

4) Goins was denied due process when the criminal information failed to provide a specific date on which the offense occurred. <u>See</u> Docket Entry 2 at CM/ECF 40-41 (alleged by him as claim five).

5) The charged offense occurred after TL turned fourteen years of age, and, as a result, Goins is innocent of raping someone less than fourteen years of age. <u>See</u> Docket Entry 2 at CM/ECF 41-43 (alleged by him as claim six).

6) Goins' trial attorney provided ineffective representation for the following reasons:

A) counsel failed to ensure that the State disclosed all text messages, messages that would have shown Harris' motivations, <u>see</u> Docket Entry 2 at CM/ECF 43-44 (alleged by Goins as claim seven and eight);

B) counsel failed to move for a directed verdict on the ground that there was insufficient evidence TL was less than fourteen years of age when the offense occurred, <u>see</u> Docket Entry 2 at CM/ECF 45 (alleged by Goins as claim nine);

C) counsel failed to object to the introduction of uncharged sexual contact between Goins and TL, see Docket Entry 2 at CM/ECF 45 (also alleged by Goins as claim nine);

D) counsel failed to seek a medical examination to show TL engaged in sexual intercourse prior to the offense occurring, see Docket Entry 2 at CM/ECF 46-47 (alleged by Goins as claim ten);

E) counsel failed to move for dismissal of the charge on speedy-trial grounds, see Docket Entry 2 at CM/ECF 48 (alleged by Goins as claim eleven);

F) counsel failed to request a jury instruction on a lesser-included offense, see Docket Entry 2 at CM/ECF 49 (alleged by Goins as claim twelve); and

G) counsel failed to preserve several issues for appeal, see Docket Entry 2 at CM/ECF 49-50 (alleged by Goins as claim thirteen); and

7) Goins is actually innocent, and counsel was ineffective for failing to prove that fact, because Goins was incarcerated for another offense during most of February of 2015 and could not have committed the offense. See Docket Entry 2 at CM/ECF 50-53 (alleged by Goins as claim fourteen).

Respondent Dexter Payne ("Payne") filed a response to the petition and asked that the petition be dismissed. Payne maintained that Goins' claims are not cognizable, without merit, procedurally barred from federal court review, or were reasonably adjudicated by the state courts.

Goins thereafter filed a reply. In it, he challenged the assertion that many of his claims are procedurally barred from federal court review. The remaining portion of his reply was devoted to explaining why he could not have committed the offense in February of 2015 as he was incarcerated for another offense during most of that month.

TL's INCONSISTENT STATEMENTS. Goins first maintains that statements TL made during a pre-trial interview were inconsistent with her trial testimony. He maintains that the state trial court erred when it denied his motion for directed verdict on that ground.

On direct appeal, Goins challenged the consistency of TL's statements but did so as a part of challenging the state trial court's denial of a motion for directed verdict on that ground. The state Court of Appeals construed the claim as a challenge to the sufficiency of the evidence and rejected the claim, noting he was attempting to incorporate arguments into his challenge that were not pertinent. Alternatively, the court found that the evidence was sufficient to support his conviction.

Although it is debatable whether Goins properly presented this claim to the state courts, the claim warrants no relief.[1] "A challenge to the reliability or credibility of witnesses cannot be asserted in federal habeas proceedings as an independent claim and it does not amount to a challenge to the sufficiency of the evidence." See <u>McClellan v. Norris</u>, 2009 WL 2245240, 4 (E.D.Ark. 2009) (Moody, J.). Questions regarding the reliability or credibility of witnesses are for the trier of fact, <u>see</u> <u>Id</u>., in this instance, the jury.

<u>FEBRUARY OF 2015 INCARCERATION</u>. Goins next maintains that he was incarcerated for another offense during most of February of 2015 and could not have committed the offense. He maintains that the state trial court should have granted a motion for directed verdict on that ground.

On direct appeal, Goins maintained that the state trial court erred when it denied his motions for directed verdict predicated on the following grounds: 1) TL's inconsistent statements, and 2) the animus between Goins and Harris. Goins did not allege on direct appeal that he made, and the state trial court denied, a motion for directed verdict predicated on the ground he was incarcerated for another offense during most of February of

---

[1]        "The simplest way to decide a case is often the best." <u>See</u> <u>Chambers v. Bowersox</u>, 157 F.3d 560, 564 n.4 (8th Cir. 1998).

2015 and could not have committed the offense. Because he did not properly present this claim to the state courts, a procedural default has occurred. Before the claim can be considered, he must show cause and prejudice for the default or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice. See Wallace v. Lockhart, 12 F.3d 823 (8th Cir. 1994).

As cause for the procedural default, Goins claims the benefit of a "prison mailbox rule." He maintains that he attempted to appeal the denial of his Rule 37 petition by giving a notice of appeal to prison authorities well before the deadline for filing a timely notice. His reliance upon a "prison mailbox rule" is only relevant, though, to the cognizable claims he attempted to raise in his Rule 37 petition. His reliance upon a "prison mailbox rule" is not relevant to the claims he could have raised, and should have raised, on direct appeal, such as a challenge to the denial of a motion for directed verdict.

Martinez v. Ryan, 566 U.S. 1 (2012), provides a means for excusing a procedural default when there is no counsel in an "initial-review collateral proceeding." The Martinez exception is of no benefit to Goins with respect to this claim, though, because the exception only excuses the procedural default of a claim of ineffective assistance of trial counsel. The exception

does not excuse the procedural default of other types of claims. <u>See</u> <u>Robinson v. Kelley</u>, 2015 WL 4944130 (E.D.Ark. 2015) (Ray, M.J.), report and recommendation adopted, 2015 WL 4943588 (E.D.Ark. 2015) (Miller, J.) (<u>Martinez</u> exception does not excuse procedural default of, <u>inter</u> <u>alia</u>, trial court error claims).

Goins maintains that he is actually innocent, a showing of which can excuse a procedural default. He is required to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). To establish the requisite probability, he must show that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>See</u> <u>Id</u>. at 327. Evidence that he was incarcerated for another offense during most of February of 2015 is not new evidence. In addition, the evidence does not prove that he did not rape TL on or about February 2015 through October 2015.

Given the foregoing, Goins failed to properly present his claim to the state courts. He cannot show cause for his procedural default, and he cannot show that a fundamental miscarriage of justice will occur if the claim is not considered. The claim is procedurally barred from federal court review.

<u>HARRIS' ANIMUS</u>. Goins maintains that the charge against him sprang from Harris' animus toward him, animus that allegedly had its origins in a prior relationship between them and substantiated by several text messages. Goins maintains that the state trial court erred when it barred him from offering proof of the animus and when the court denied a motion for directed verdict on that ground.

Prior to trial, the question arose whether Goins could offer proof that the charge in this case sprang from his prior drug and sexual relationship with Harris. <u>See</u> Docket Entry 8, Exhibit G, Part 1 at CM/ECF 207-219. The state trial court preliminarily barred any mention of such a relationship.

During the trial, a hearing was conducted outside the presence of the jury during which evidence of Harris' motivations was proffered. <u>See</u> Docket Entry 8, Exhibit G, Part 2 at CM/ECF 119-165. The state trial court barred the introduction of most of the evidence, finding the following:

> [The state trial court]: As to [Goins'] argument regarding cross examination, the Court is not precluding the Defendant from cross examining witnesses. I am precluding a certain line of questioning that the Court has found not to have a causal connection or any relevance to whether or not there is motive on the part of the mother to fabricate a story that led to the charges being brought in this case. But as to other lines of inquiry in cross examination that are subject of the evidence in this case, the Court is not and will not and never will preclude counsel from inquiring.

[Goins' counsel]: Well, am I precluded from asking her [i.e., Harris] about drugs?

[The state trial court]: Yes.

…

[Goins' counsel]: And I'm precluded from asking her about the breaking off of any relationship that they had?

[The state trial court]: You can say, you can ask her, you all can talk about it. You know him, yes. How do you know him, you know. We met in the neighborhood. The testimony she's talking about we met each other in the club. We saw, we were friends, saw him in 2008.

See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 17. The state trial court did, however, allow Goins to question Harris about her alleged request for money to have the charges dismissed. See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 63-65.

On direct appeal, Goins maintained that the state trial court erred when it denied his motion for directed verdict on the ground the charge sprang from Harris' animus. The state Court of Appeals construed the claim as a challenge to the sufficiency of the evidence and rejected the claim, noting Goins was attempting to incorporate arguments into his challenge that were not pertinent. The court alternatively found that the evidence was sufficient to support his conviction.

It is debatable whether Goins properly presented this claim to the state courts. That issue need not be resolved, though, because the claim warrants no relief.

"In the habeas context, '[r]ules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process.'" See Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) [quoting Adail v. Wyrick, 711 F.2d 99, 102 (8th Cir.1983)]. Although exploring a witness' motivation for testifying is a proper function of the right of cross-examination, see Davis v. Alaska, 415 U.S. 308 (1974), the right was not violated here for the reasons that follow.

First, Harris' testimony was not critical to the State's case. See United States v. Pfeiffer, 539 F.2d 668 (8th Cir. 1976) (when witness' credibility is critical to State's case, defense should be given maximum opportunity to test credibility by exploring witness' motivation). She did not testify during the State's case-in-chief but was instead called by Goins.

Second, Harris acknowledged that she had a prior relationship with Goins based, in part, on illegal activity. Specifically, she testified that she had given him money when "buying weed" from him. See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 73.

Third, evidence was presented at trial that had Goins given Harris money, the charge would never have been pursued. See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 78-80. Although Harris denied the assertion, see Id. at 63-65, 75, the matter was placed before the jury.

Fourth, evidence was presented at trial that Harris instructed TL to falsely allege she had been raped by Goins. Specifically, Goins' niece testified to the following conversation she had with TL: "… [TL] told me that her momma told her to do this. [TL] told me that her momma told her to say my uncle raped her when he didn't rape her." See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 104.[2]

RECORDINGS OF TELEPHONE CALLS. While incarcerated prior to trial, Goins took part in portions of two telephone calls between Harris' sister, Tiffany Harris ("Tiffany"), and Tiffany's boyfriend. During the calls, Goins instructed Tiffany to tell Harris not to attend the trial. The calls were recorded, and Goins' part of the calls were admitted at trial over his initial objection. Goins maintains that the state trial court erred when it admitted the recordings because they infringe upon his right not to incriminate himself and otherwise contain hearsay.

---

[2]    For the same reasons, the state trial court's exclusion of evidence of Goins and Harris' alleged sexual relationship was not so prejudicial as to amount to a denial of due process.

On direct appeal, Goins maintained that the state trial court erred when it admitted the telephone recordings into evidence. The state Court of Appeals construed the claim as a challenge to the chain-of-custody and rejected the claim. The court also rejected a constitutional component to the claim because it was raised for the first time on appeal.

It is debatable whether Goins properly presented this claim to the state courts. That issue need not be resolved, though, because the claim warrants no relief. Despite initially objecting to the admission of the recordings, Goins "ultimately asked the trial court to play the entire CD [of the recordings], which was done." See Goins v. State, 568 S.W.3d at 304. See also Docket Entry 8, Exhibit G, Part 3 at CM/ECF 39-43. Moreover, Tiffany testified at trial and confirmed that Goins instructed her to tell Harris "not to come to court." See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 36-37.[3]

THE CRIMINAL INFORMATION. In an amended criminal information, the State alleged, in part, that Goins raped TL "[o]n or about February 2015 through October 2015." Goins maintains that he was denied due process when the information failed to state a specific date of the offense.

---

[3]    With regard to the allegedly hearsay statements, Goins was not a part of those telephone calls. The conversations were between Tiffany and her boyfriend and were apparently quite vulgar. See Docket Entry 8, Exhibit G, Part 3 at CM/ECF 42.

Goins did not raise the claim on direct appeal but did attempt to raise the claim in his Rule 37 petition. The claim is not cognizable, though, in a Rule 37 proceeding as "challenges to the sufficiency of the charging instrument are not jurisdictional and must be raised prior trial." <u>See Johnson v. State</u>, 2019 Ark. 68, 571 S.W.3d 519, 523 (2019). Because he did not properly present this claim to the state courts, it cannot be considered unless he can show cause and prejudice for the default or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice. For the reasons provided above, <u>see</u> <u>supra</u> at 10-11, he cannot, in part because evidence of a defective criminal information is not new evidence and does not establish his innocence. The claim is procedurally barred from federal court review.

<u>TL'S AGE</u>. Goins maintains that the charged offense occurred after TL turned fourteen years of age. Goins maintains that he is therefore innocent of raping someone less than fourteen years of age.

Goins did not raise the claim on direct appeal but did attempt to raise it in his Rule 37 petition. The claim is not cognizable, though, in a Rule 37 proceeding. <u>See</u> <u>Ortega v. State</u>, 2017 Ark. 365, 533 S.W.3d 68 (2017) (challenge to sufficiency of evidence not cognizable in Rule 37). Because he did not properly present this claim to the state courts, it cannot be

considered unless he can show cause and prejudice for the default or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice. For the reasons provided above, see supra at 10-11, he cannot, in part because evidence of TL's age is not new evidence. The claim is procedurally barred from federal court review.

INEFFECTIVE ASSISTANCE OF COUNSEL. Goins maintains that his trial attorney provided ineffective assistance. In support of his assertion, he offers a number of reasons why, many of which echo the claims he asserted above.

Goins filed a Rule 37 petition in which he challenged the adequacy of counsel's representation on the same grounds he now offers. The state trial court denied the petition, but he failed to file a timely notice of appeal. His subsequent motion for belated appeal was denied. The question is whether his claims challenging counsel's representation are procedurally barred from federal court review.

As cause for the procedural default, Goins claims the benefit of a "prison mailbox rule." He maintains that he attempted to appeal the denial of his Rule 37 petition by giving a notice of appeal to prison authorities well before the deadline for filing a timely notice. His reliance upon a "prison mailbox rule" is relevant to the cognizable claims he attempted to

raise in his Rule 37 petition, those being, his claims challenging counsel's representation. For purposes of this Recommendation, the undersigned assumes that Goins is entitled to the benefit of a "prison mailbox" rule, and his claims challenging counsel's representation are not procedurally barred from federal court review.[4]

A challenge to counsel's representation is governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). It requires the petitioner to show that counsel's performance was deficient and, if so, that the petitioner was prejudiced by the inadequate representation. <u>See</u> <u>Stephens v. Smith</u>, 963 F.3d 795 (8th Cir. 2020). The prejudice prong requires the petitioner to show the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. at 694.

A. Disclosure of text messages. Goins first maintains that counsel erred by failing to ensure all text messages were disclosed. Goins maintains that the text messages revealed Harris' motivation for "bringing a false rape charge against [him] and getting [TL] to go along with it." <u>See</u> Docket Entry 2 at CM/ECF 44.

---

[4]    In so assuming, the undersigned also assumes that Goins' claims challenging counsel's representation benefit from the <u>Martinez</u> exception.

The claim warrants no relief for at least two reasons. First, the state trial court barred the introduction of the text messages. As it noted in denying Harris' Rule 37 petition, "… the messages had been deemed by the Court to be inadmissible and were suppressed." <u>See</u> Docket Entry 8, Exhibit E at CM/ECF 6. The undersigned defers to the adjudication of the claim made by the state trial court, <u>see</u> 28 U.S.C. 2254(d)(1)-(2), and finds that counsel committed no error.[5]

Second, Goins can show no prejudice. Harris' testimony was not critical to the State's case. Moreover, evidence was presented at trial that Harris had asked Goines for money not to pursue the charge and had instructed TL to falsely accuse Goins. The text messages were likely cumulative, and, even if they were not fully disclosed, the result of this proceeding would not have been different had they been fully disclosed.

B. Evidence of TL's age. Goins next maintains that counsel erred when he failed to move for a directed verdict on the ground there was insufficient evidence TL was less than fourteen years of age when the offense occurred. Specifically, Goins maintains that the State failed to prove when the alleged offense occurred.

---

[5]   28 U.S.C. 2254(d)(1)-(2) mandate the granting of deference to state court adjudications on the merits and apply to decisions of both the state trial and appellate courts. <u>See</u> <u>McCoy v. Norris</u>, 2007 WL 865409, 2 (E.D.Ark. 2007) (Forster, M.J.).

Proof of TL's age was material to the offense.[6] Goins' claim, though, warrants no relief. TL testified that she was born on October 23, 2001. See Docket Entry 8, Exhibit G, Part 2 at CM/ECF 69. She first met Goins in February or March of 2015, or approximately seven months before her fourteenth birthday. See Id. at CM/ECF 72-73. "[A] couple of weeks" after meeting him, they had sexual intercourse together for the first time. See Id. at CM/ECF 73, 86. She then recounted a series of encounters when they engaged in sexual intercourse or sexual contact, all of which occurred within the State of Arkansas. See Id. at CM/ECF 76-86. She testified that "one or more" of the incidents occurred before she turned fourteen. See Id. at CM/ECF 86. Given TL's testimony, counsel did not err when he failed to move for a directed verdict on the ground there was insufficient evidence TL was under fourteen years of age when the offense occurred. Moreover, Goins can show no prejudice as the result of this proceeding would not have been different had the motion been made.

---

[6]    In Childress v. State, 2009 Ark.App. 234, --- S.W.3d ---, 2009 WL 863952, 2 (2009), then Arkansas Court of Appeals Judge D.P. Marshall Jr. observed the following: "Particularly when dealing with sexual crimes against children, 'the time a crime is alleged to have occurred is not of critical significance, unless the date is material to the offense.' Martin v. State, 354 Ark. 289, 119 S.W.3d 504, 508 (2003)." Here, the date on which the rape occurred is material. Ark. Code Ann. 5-14-103 provides, in relevant part, that a person commits rape if he engages in sexual intercourse or deviate sexual activity with another person "[w]ho is less than fourteen (14) years of age," and Goins was alleged to have done so.

C. Uncharged sexual contact. Goins maintains that counsel erred when he failed to object to the introduction of uncharged sexual contact between Goins and TL. It appears to be Goins' contention that because only one rape was alleged to have occurred, counsel should have objected to evidence of other sexual contact between Goins and TL.

The claim warrants no relief. Assuming it is possible to pinpoint the incident the jury based its verdict on, evidence of other sexual contact between Goins and TL was likely admissible. See McDaniel v. State, 2018 Ark.App. 151, 544 S.W.3d 115, 118 (2018) (when charge involves sexual assault of minor, pedophile exception allows State to introduce evidence of defendant's similar acts with same person when helpful in showing proclivity for specific act with person with whom defendant has intimate relationship). Thus, counsel did not err in failing to object to the evidence.

D. Medical examination. Goins next maintains that counsel failed to seek a medical examination of TL. Goins maintains that the examination would have shown TL engaged in sexual intercourse prior to the offense occurring.

This claim warrants no relief. Evidence that TL may have engaged in sexual intercourse prior to the offense occurring is irrelevant. Counsel did not err in failing to seek a medical examination of TL.

E. Speedy-trial. Goins maintains that counsel failed to move for dismissal of the charge on speedy-trial grounds. Goins maintains that a total of 595 days passed between his arrest and trial, and he "signed no papers" approving any continuances of the trial date. See Docket Entry 2 at CM/ECF 48.

The claim warrants no relief. The state trial court rejected the claim, finding in part that of the 595 days between Goins' arrest and the start of his trial, 531 day were excluded from speedy trial calculations because of the seven continuances he was granted. The court noted that "two or more" of the continuances were granted "so that [he] could retain new counsel." See Docket Entry 8, Exhibit E at CM/ECF 8. The undersigned defers to the adjudication of the claim made by the state trial court, see 28 U.S.C. 2254(d)(1)-(2), and finds that counsel committed no error.

F. Lesser included offense. Goins maintains that counsel failed to request a jury instruction on a lesser-included offense. Goins represents that "[t]he [State] failed to singly charge [him] with each alleged sexual violation and the jury should have been instructed as to each alleged sexual act, and not reach a verdict on a collection of criminal violations that violate separate statues and require different elements of proof." See Docket Entry 2 at CM/ECF 49.

This claim warrants no relief. The state trial court rejected the claim, finding that "there existed no rational basis for a lesser included offense, if one existed, to be submitted to the jury." See Docket Entry 8, Exhibit E at CM/ECF 11. The undersigned defers to the adjudication of the claim made by the state trial court, see 28 U.S.C. 2254(d)(1)-(2), and finds that counsel committed no error.

G. Claims on direct appeal. Goins last maintains that counsel failed to preserve several claims for direct appeal. Goins represented that the claims involved "prejudicial rulings to the defense" and the suppression of evidence. See Docket Entry 2 at CM/ECF 49.

The claim warrants no relief. The state trial court rejected the claim, finding that the claim was conclusory and supported by no facts. See Docket Entry 8, Exhibit E at CM/ECF 11. The undersigned defers to the adjudication of the claim made by the state trial court, see 28 U.S.C. 2254(d)(1)-(2), and finds the claim to be without merit.

FREESTANDING CLAIM OF ACTUAL INNOCENCE. Goins last maintains that he is actually innocent, and counsel was ineffective for failing to offer proof of that fact, because Goins was incarcerated for another offense during most of February of 2015 and could not have committed the offense. In support of the claim, Goins represents the following:

> … Goins was charged by the State for alleging committing rape
> from February 2015 to October 2015. … Goins was convicted
> [of] committing rape on February 1, 2015. See Sentencing Order
> of February 28, 2018. … Defense counsel was ineffective and
> Goins was prejudiced because had counsel thoroughly
> investigated the case, counsel would have discovered that
> Goins was actually locked up in prison on February 1, 2015, …
> Goins has contacted the Arkansas Department of Corrections
> Records Department and received verification that he was not
> released from prison until February 25, 2015. …

See Docket Entry 2 at CM/ECF 50.

The two-part claim warrants no relief for at least three reasons. First, assuming a freestanding claim of actual innocence is cognizable in this proceeding, Goins did not properly present the claim to the state courts. For the reasons provided above, see supra at 10-11, he cannot show cause and prejudice for his procedural default or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice. The claim is procedurally barred from federal court review.

Second, assuming Goins' freestanding claim of actual innocence is not procedurally barred from federal court review, evidence that he was incarcerated for another offense during most of February of 2015 is not new evidence. He knew of the evidence at the time of his trial. Moreover, the evidence does not prove that he did not rape TL on or about February 2015 through October 2015. It is true that the Sentencing Order notes the

offense date as February 1, 2015, <u>see</u> Docket Entry 8, Exhibit A at CM/ECF 1, a date on which he was then incarcerated for another offense, <u>see</u> Docket Entry 2 at CM/ECF 56. That inconsistency is of no meaningful significance because the offense date is only material with regard to TL's age, and there is sufficient evidence she was less than fourteen years of age when the offense occurred.

Last, with respect to the ineffective-assistance-of-counsel part of this claim, Goins cannot satisfy the <u>Strickland v. Washington</u> cause and prejudice standard. Counsel did not err by failing to offer proof of Goins' prior incarceration, as the period of his incarceration only accounted for twenty-five days of the nine month period charged in the amended criminal information. In addition, there is not a reasonable probability that, but for counsel's failure, the result of the proceeding would have been different.

<u>RECOMMENDATION</u>. For the foregoing reasons, it is recommended that Goins' petition be dismissed, all requested relief be denied, and judgment be entered for Payne. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. The undersigned is not persuaded that Goins can make a "substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. 2253(c)(2).

DATED this 5th day of February, 2021.

_____
UNITED STATES MAGISTRATE JUDGE